# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1505

LARRY E. LEONARD, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    February 20, 2004  )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Edward V. Cassidy*, *Jr.*, Acting Deputy Assistant General Counsel; and *Nicole Degraffenreed*, all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and GREENE, *Judges*.

KRAMER, *Chief Judge*:  The appellant appeals through counsel a May 11, 2001, Board of Veterans' Appeals (Board or BVA) decision that denied an effective date prior to September 23, 1985, for the award of a rating of total disability based on individual unemployability (TDIU). Record (R.) at 8.  The appellant and the Secretary have filed briefs, and the appellant has filed a reply brief.  The appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons that follow, the Court will affirm the May 2001 decision of the Board.

## I. FACTS

The appellant served on active duty in the U.S. Army from September 1971 to September 1973.  R. at 11.  His service medical records reflect that, in February 1973, he was hospitalized after having been involved in an automobile accident (*see*, *e.g.*, R. at 22, 27, 112); the diagnoses were (1) "[c]losed fracture, left tibia and fibula," (2) "[g]rade 2 [acromioclavicular] separation, right," and (3)

"[c]erebral concussion" (R. at 28). In February 1974, a VA regional office (RO) granted service connection for a fracture of the left tibia and fibula with 1/4-inch shortening, effective September 26, 1973, and assigned a 20% rating; in addition, the RO, inter alia, denied service connection for residuals of a right-shoulder injury. R. at 154. The appellant appealed that decision. R. at 156, 164. In a November 1974 decision, the Board granted service connection for residuals of a right-shoulder injury and denied a rating in excess of 20% for the appellant's service-connected left-leg disability. R. at 198. That same month, the RO assigned a 10% rating for the service-connected right-shoulder condition, effective September 26, 1973. R. at 201. The appellant appealed the 10% rating assigned for his service-connected right-shoulder condition and continued to appeal the 20% rating assigned for his service-connected left-leg disability; the Board, in a June 1977 decision, awarded the appellant a temporary total disability rating from August 1, 1975, to February 1, 1976, based on postoperative residuals of left-leg surgery. R. at 352-53. The Board, however, denied entitlement to increased ratings for his service-connected right-shoulder and left-leg conditions. *Id*. Following an October 1983 orthopedic examination, the RO, in December 1983, increased to 30%, effective November 1, 1983, the appellant's rating for his service-connected left-leg disability. R. at 822.

After the appellant underwent an additional examination, the Board, in June 1988, granted service connection for (1) organic brain syndrome with depression and (2) a seizure disorder. R. at 1257. In a December 1988 decision implementing the June 1988 BVA decision, the RO assigned a 40% rating for post-traumatic seizure disorder, effective May 21, 1985, and a 0% rating for organic brain syndrome, effective August 21, 1985; the RO also denied a rating of TDIU. R. at 1277. The appellant appealed the assigned ratings. R. at 1280, 1307, 1315, 1343. Eventually, the BVA, in a November 1992 decision, increased to 70% his disability rating for his service-connected organic brain syndrome and awarded him a rating of TDIU. R. at 1452-53. The RO, in January 1993, assigned an effective date of May 21, 1985, for the award of service connection for his organic brain syndrome and an effective date of January 16, 1991, for the award of his TDIU rating. R. at 1462. In correspondence to the RO dated in April 1993, the appellant asserted that he "disagree[d] with [the RO's January 1993] decision [to] award [him] a 70% evaluation for [his] service[-]connected [o]rganic [b]rain [s]yndrome" and that "the medical evidence of record clearly support[ed] a total evaluation for this condition effective May 21, 1985." R. at 1493. Shortly thereafter, the RO

2

informed the appellant that, because he had never appealed the November 1992 BVA decision, "there [wa]s no further action that [could] be taken unless [he] ha[d] new evidence to show [that] an evaluation of more than 70[% wa]s warranted." R. at 1496. The appellant then appealed the January 1991 effective date assigned for his TDIU rating. R. at 1498, 1515-17.

The Board, in an August 1994 decision, awarded the appellant an earlier effective date of September 23, 1985, for his TDIU rating on the basis that a letter received by the RO on that date "should properly be considered the [appellant's] initial claim for [a rating of TDIU]." R. at 1535. The Board also concluded that "nothing else in the claims files . . . would warrant the assignment of an effective date prior to September 23, 1985." R. at 1536. In correspondence received by the RO in December 1994, he requested an earlier effective date for his TDIU rating; he asserted that a Social Security Administration decision demonstrated that he was totally disabled as of January 1975. R. at 1544. In response, the RO informed him that the Board already had decided that issue and that he could file a motion for reconsideration of the Board's decision or an appeal to the Court. R. at 1554. In April 1995, the appellant filed a motion for reconsideration with the BVA. R. at 1590. The Chairman of the Board denied the motion in July 1995, and the appellant, in December 1995, filed a Notice of Appeal (NOA) with the Court. R. at 1594. The Court, in a June 1997 opinion, dismissed the appellant's appeal for lack of jurisdiction on the basis that he had failed to file a timely NOA; specifically, the Court concluded that the appellant had "failed to timely file both his request for reconsideration and, following the Chairman's decision on that motion, his NOA." R. at 1596.

In correspondence received by the RO in April 1999, the appellant asked that his "case be considered due to [clear and unmistakable error (CUE)]"; he again asserted that he was entitled to an effective date in 1975 for his TDIU rating. R. at 1666. In March 2000, the BVA found no CUE in the 1977 Board decision that denied entitlement to a TDIU rating or in the 1994 BVA decision that granted an effective date of September 23, 1985, for the appellant's TDIU rating. R. at 1682, 1687. The appellant did not appeal that decision. The RO, in May 2000, after reviewing a VA medical record dated in April 2000, issued a decision continuing the appellant's TDIU rating; the RO concluded that an effective date earlier than September 23, 1985, was not warranted. R. at 1691. The appellant filed a Notice of Disagreement (NOD) with respect to that decision; he informed VA

that he wanted "to reopen [his] . . . claim for a total evaluation due to all of [his] service[-]connected conditions" so that he would be granted "an effective date of [September 26, 1973]." R. at 1694. He attached a copy of the April 2000 VA medical record that reflected a staff psychiatrist's opinion that "his inability to learn new material, impairment of recent memory, [and] psychotic relapses under minor stress . . . ha[d] made him unemployable since 1973-4." R. at 1695. The RO issued a Statement of the Case (SOC) (R. at 1700-08), and the appellant perfected an appeal to the BVA (R. at 1710).

In the May 2001 decision on appeal, the Board denied an effective date prior to September 23, 1985, for the appellant's TDIU rating. R. at 8. The Board noted that, "[a]lthough the Board's August 1994 decision, which determined that the correct effective date for TDIU was September 23, 1985, became final, applicable law provides that a claim which is the subject of a prior final decision may nevertheless be reopened upon presentation of new and material evidence." R. at 5. The Board concluded that, "[e]ven if the appellant had submitted 'new and material' evidence regarding his claim, the effective date for the grant of a TDIU [rating] could never be earlier than the date [that] the RO received that claim to reopen . . . ." R. at 7. The Board ultimately concluded that, "absent CUE, there is no factual or legal basis upon which this appellant could obtain the remedy he seeks, and his claim must be denied." *Id*.

On appeal, the appellant argues that the Board "failed to comply with 38 C.F.R. § 3.157(b)(1) [(2003)]" (Appellant's Brief (Br.) at 14-15) and "impermissibly converted the [RO's] merit determination of the issue of . . . an earlier effective date for the award of TDIU to a claim to reopen" (Appellant's Br. at 15). Specifically, he contends that 38 C.F.R. § 3.157(b)(1) "is silent regarding the requirement to submit new and material evidence, and the Board erred by imposing upon [him] such a requirement." Appellant's Br. at 16. In that regard, he argues that "the issue of entitlement to an earlier effective date had not been previously disallowed" and that "the requirement of 38 U.S.C. § 5108 was not for application in this case . . . ." Appellant's Br. at 17. He further contends that the April 2000 VA medical report (R. at 1695) "was the predicate for the reopening of [the] issue [of] the assignment of an effective date without the need for the submission of any further new and material evidence . . . ." Appellant's Br. at 19. He also argues that the Board incorrectly applied 38 C.F.R. § 3.400(q)(ii) (2003) to his claim and that it instead should have

4

applied 38 C.F.R. § 3.400(o) (2003). Appellant's Br. at 21-24. In this regard, he argues that his "underlying claim . . . was [for] entitlement to TDIU, which is in the nature of a claim for an increased rating." Appellant's Br. at 23. Finally, he argues that the RO never issued an SOC after he filed, in April 1993, a timely NOD with respect to the RO's January 1993 decision as to "the rating assigned [for] the grant of service connection for [organic brain syndrome], as well as the effective date assigned for [that condition]." Appellant's Br. at 25.

The Secretary counters that, "although under VA regulations the receipt of the [April] 2000 outpatient report could be construed as an informal claim for an increased rating, its receipt in this case in no way impacts the appropriate effective date for TDIU because [the a]ppellant already had an effective date earlier than would be provided by the outpatient treatment report." Secretary's Br. at 9. In response to the appellant's contention that the Board improperly applied 38 C.F.R. § 3.400(q)(ii), the Secretary asserts that, "[a]bsent a finding of CUE in the August 1994 [BVA] decision, the Board determined that the proper analysis for determining entitlement to an earlier effective date was through the submission of new and material evidence." Secretary's Br. at 11. Regarding the appellant's final argument, the Secretary contends that the RO construed the April 1993 NOD "as a disagreement with the disability evaluation assigned for his condition and not whether the appropriate effective date was assigned." Secretary's Br. at 12. In addition, he argues that, even if the Court construes that NOD as expressing disagreement with the effective date assigned, that "would have no bearing on the issue currently before the Court" because the effective date for the appellant's TDIU rating already predates "the 1993 attempt to reopen the claim for an earlier effective date." Secretary's Br. at 13.

## II. ANALYSIS

The determination of the effective date for an award of service connection based on a reopened claim is governed by 38 U.S.C. § 5110(a), which provides:

> Unless specifically provided otherwise in this chapter, the effective date of an award based on . . . a claim reopened after final adjudication . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

5

*See also* 38 C.F.R. § 3.400(q)(ii), (r) (2003). Under 38 C.F.R. § 3.157(a), a report of examination or hospitalization may be accepted as a claim for benefits if it meets the requirements of 38 C.F.R. § 3.157. Pursuant to 38 C.F.R. § 3.157(b), "[o]nce a formal claim for . . . compensation has been allowed or a formal claim for compensation [has been] disallowed for the reason that the service-connected disability [was] not compensable in degree," specified records "will be accepted as an informal claim for increased benefits or an informal claim to reopen." Section 3.157(b)(1) provides, inter alia, that the date of admission or examination at a VA hospital "will be accepted as the date of receipt of a claim." 38 C.F.R. § 3.157(b)(1).

In the instant case, the August 1994 BVA decision granting the appellant an effective date of September 23, 1985, for his award of a TDIU rating and denying an effective date prior thereto (*see* R. at 1536) became final when it was not timely appealed. *See* R. at 1597; *cf. Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991) (finality of BVA decision is abated if motion for BVA reconsideration is filed within 120-day appeal period). *See generally Lapier v. Brown*, 5 Vet.App. 215, 216-17 (1993) (final BVA decision denying earlier effective date is previous and final disallowance within meaning of 38 U.S.C. § 5108). Because there are "only two exceptions to the rule of finality," the appellant was left with only two means by which to overcome the finality of that decision: (1) Reopening based on the presentation of new and material evidence or (2) CUE. *Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc). Of the two, only the latter could conceivably result in an earlier effective date for the award of his TDIU rating because it is well established that the effective date for an award based on a claim to reopen is the date of the claim to reopen. *See Flash v. Brown*, 8 Vet.App. 332, 340 (1995) ("[W]hen a claim to reopen is successful and the benefit sought is awarded upon readjudication, the effective date is the date of the claim to reopen."); *see also Sears v. Principi*, 16 Vet.App. 244, 246-50 (2002), *aff'd*, 349 F.3d 1326 (Fed. Cir. 2003). Because in the instant case the appellant's claim to reopen was filed in April 2000 and because he already has been awarded an effective date of September 23, 1985, any such claim to reopen could not lead to an earlier effective date. *See Flash*, *supra*; *see also Sears*, *supra*. Moreover, the instant appeal is not predicated upon CUE, and it should be noted that the appellant already has waged an unsuccessful CUE attack on the August 1994 Board decision. R. at 1682, 1687. Put differently, to the extent that the appellant suggests that there has been no prior final

disallowance of his claim for an earlier effective date, that argument is unavailing (*see Lapier*, 5 Vet.App. at 216-17) and, even if he could show that 38 U.S.C. § 5108 is inapplicable, that argument does not provide a basis for overcoming the finality of the August 1994 BVA decision as to the proper effective date for his TDIU rating (*see Cook*, 318 F.3d at 1339).

The crux of the instant appeal appears to be, in essence, that VA regulation 38 C.F.R. § 3.157(b) creates some sort of a third exception to the rule of finality that assertedly would allow for the appellant's earlier-effective-date claim to be reopened in the absence of new and material evidence. *See* Appellant's Br. at 16 ("Pursuant to [38 C.F.R. § 3.157(b)], the [a]gency was required to reopen the issue of the [a]ppellant's entitlement to an earlier effective date. The regulation is silent regarding the requirement to submit new and material evidence, and the Board erred by imposing upon the [a]ppellant such a requirement."). The appellant cites to no authority for that proposition, and such an argument flies in the face of a statutory scheme that clearly allows for the reopening of a previously and finally disallowed claim exclusively upon the production of new and material evidence. *See* 38 U.S.C. §§ 7104(b) ("Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered."), 5108 ("If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim."). Moreover, even if the appellant were correct in his interpretation of 38 C.F.R. § 3.157(b), he has not demonstrated, as the Court has already noted, how the application of that regulation would result in the award of an effective date prior to September 23, 1985, for his rating of TDIU. In this regard, the Court notes that, even if the appellant's claim could be "reopened" without the presentation of new and material evidence, as stated above, the effective date for an award based upon that claim would be the date of the claim to reopen–in this case, April 2000, nearly fifteen years later than the current effective date of September 23, 1985. *See Flash*, 8 Vet.App. at 340 ("[W]hen a claim to reopen is successful and the benefit sought is awarded upon readjudication, the effective date is the date of the claim to reopen."); *see also Sears*, 16 Vet.App. at 246-50.

With regard to the appellant's second argument, the Court concludes that, contrary to the appellant's assertions, it is inconsequential that his underlying claim was for an increased rating.

Specifically, the appellant has failed to demonstrate how the application of 38 C.F.R. § 3.400(o) could result in the award of an effective date prior to September 1985 for the award of his TDIU rating. *See* 38 C.F.R. § 3.400(o) (effective date for increased compensation is "[e]arliest date as of which it is factually ascertainable that an increase in disability had occurred if claim is received within 1 year from such date otherwise, date of receipt of claim").

His third and final argument is also unavailing. The appellant, in his April 1993 NOD, asserted that he "disagree[d] with [the RO's January 1993] decision [to] award [him] a 70% evaluation for [his] service[-]connected [o]rganic [b]rain [s]yndrome" and that "the medical evidence of record clearly support[ed] a total evaluation for this condition effective May 21, 1985." R. at 1493. He now argues that the April 1993 NOD expressed disagreement with the effective date and the rating assigned for his award of service connection for organic brain syndrome and that the RO failed to issue an SOC. Appellant's Br. at 24-29. He fails to explain, however, how that NOD constituted an expression of disagreement with the effective date assigned considering that the RO already had assigned an effective date of May 21, 1985, for his award of service connection for organic brain syndrome. R. at 1462; *see also* 38 C.F.R. § 20.201 (2003) (NOD must "express[] dissatisfaction or disagreement" with an RO determination). Moreover, even assuming that the April 1993 NOD had expressed disagreement with the effective date assigned for the award of a 70% rating for the appellant's organic brain syndrome and that the RO had erred insofar as it failed to issue an SOC, the appellant has not demonstrated how any such error would impact the issue on appeal–entitlement to an effective date prior to September 23, 1985, for the award of his TDIU rating. *See* U.S. VET. APP. R. 28(a)(5) (appellant's brief must contain "an argument . . . and the reasons for [them], with citations to the authorities . . . relied on"). In conclusion, as outlined above, because reopening of the appellant's claim could not result in an effective date earlier than the date of receipt of the reopened claim, *see Lapier*, 5 Vet.App. at 216-17, the Court concludes that the appellant has not demonstrated that the Board erred in concluding that there was no legal basis for an earlier effective date for the award of his TDIU rating. *See Sabonis v. Brown*, 6 Vet.App. 426, 429-30 (1994) (where law and not evidence is dispositive, claim should be denied or appeal terminated because of lack of legal merit or lack of entitlement under law). Accordingly, the Court will affirm the decision on appeal.

### III. CONCLUSION

Upon consideration of the foregoing, the parties' pleadings, and the record on appeal, the May 11, 2001, BVA decision is AFFIRMED.